# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **SANDRA M. HIDER**, Administrator of the Estate of JOSEPH P. EVANS, Deceased, 233 Ohio Avenue, N.E. Massillon, Ohio 44646 | ) CASE NO. ) ) ) JUDGE ) |
| Plaintiff, | ) ) |
| v. | ) **CIVIL ACTION COMPLAINT** ) **FEDERAL TORT CLAIMS ACT** ) |
| THE UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

Plaintiff, Sandra M. Hider, Administrator for, and on behalf of, the Estate of Joseph P Evans, Deceased, by and through her attorney, files this Complaint against the Defendant, The United States of America, for conduct of its agents, servants, and employees, including, but not limited to: Cynthia Bell, Laura Brown, M.D., Joanna Buchannon, Connie Garlock, Pharmacist David R. Gearhart, Michael Ignatowski, M.D., Colleen McQuown, M.D., Patricia James-Stewart, Elaine Jones, Jennifer Kraninger, M.D., Youssef Mahfoud, M.D., Pharmacist Martha Mazak, Ann McNeill, Kevin Smith and Joshua White, and alleges and avers as follows:

## JURISDICTION AND VENUE

1. This Court possesses proper subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), as this action is brought against Defendant The United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, for damages caused by employees and/or agents of the United States acting within the scope of their employment and/or agency.

2. This Court possesses proper personal jurisdiction over the parties named herein.

3. Pursuant to 28 U.S.C. § 1402(b), venue is proper in the Northern District of Ohio, Eastern Division, inasmuch as all of the acts giving rise to Plaintiff's cause of action occurred at the Louis Stokes Cleveland Veterans Affairs Medical Center in Cleveland, Ohio, within the boundaries of the Northern District of Ohio, Eastern Division.

**PARTIES**

4. Plaintiff is the Estate of Joseph P. Evans, through its Administrator Sandra M. Hider, who is an adult individual and citizen of the State of Ohio, residing therein at 233 Ohio Avenue, N.E., Massillon, Ohio 44646.

5. Sandra M. Hider is the Administrator of the Estate of her deceased son, Joseph P. Evans, having received Letters of Authority from the Stark County Probate Court on July 24, 2019.

6. Defendant, The United States of America, at all times material hereto acted through its agency, the Department of Veterans Affairs, which, at all times material hereto, owned, operated, and controlled the health-care facility known as the Louis Stokes Cleveland Veterans Affairs Medical Center ("Louis Stokes"), located at 10701 East Boulevard, Cleveland, Ohio 44106, which employed the negligent healthcare personnel who rendered care and treatment to Joseph P. Evans, including, but not limited to: Cynthia Bell, Laura Brown, M.D., Joanna Buchannon, Connie Garlock, Pharmacist David R. Gearhart, Michael Ignatowski, M.D., Colleen McQuown, M.D., Patricia James-Stewart, Elaine Jones, Jennifer Kraninger, M.D., Youssef Mahfoud, M.D., Pharmacist Martha Mazak, Ann McNeill, Kevin Smith and Joshua White.

**JURISDICTIONAL PEREQUISITES**

7. All conditions precedent required of Plaintiff prior to bringing this action have occurred, or have been met, including all statutory pre-suit notice and investigation requirements of

the Federal Tort Claims Act, including 28 U.S.C.A. §§ 2401 and 2675.

8. Plaintiff complied with the pre-suit notification requirements of the Federal Tort Claims Act by filing an administrative claim for sums certain on the prescribed Standard Form 95 with the above-identified Louis Stokes and the Department of Veterans Affairs which was received by the Chief of Staff Office on February 11, 2020.

9. On January 13, 2021, The Department of Veterans Affairs sent its final denial of the claim, pursuant to 28 U.S.C. §§ 1346(b) and 2671-2680. Plaintiff files this action now, within the six-month period provided for pursuant to the Federal Tort Claims Act.

10. Plaintiff files this action now, within the two year statute of limitations period provided for pursuant to the Federal Tort Claims Act.

11. Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencing and prosecuting this litigation.

## **LIABILITY OF THE UNITED STATES OF AMERICA**

12. Liability of The United States of America is predicated specifically on 28 U.S.C. § § 1346(b)(1) and 2674 because the personal injuries and resulting damages, which this Complaint describes, were proximately caused by the negligence, wrongful acts, and omissions of employees of The United States of America at Louis Stokes in Cuyahoga County, Ohio, while those employees were acting within the course and scope of their office or employment, under circumstances where The Untied States of America, if it were a private person, would be liable to Plaintiff in the same manner, and to the same extent, as a private individual under the laws of Ohio.

13. The United States of America, Department of Veterans Affairs, in operating Louis Stokes in Cuyahoga County, Ohio was, at all times material hereto, required to exercise that degree of care, skill, and knowledge required of a reasonably prudent hospital in treating its patients, and to

3

comply with the required medical standards of a reasonably prudent hospital acting through its healthcare personnel.

14. The agents, servants, and employees (including, but not limited to, clerical personnel, nurses, residents, physicians, medical students, and assistants) of The United States of America through Louis Stokes in Cuyahoga County, Ohio were required to exercise the degree of care, skill, and diligence required of reasonably prudent medical personnel, and for complying with the required medical standards of reasonably prudent medical personnel.

15. In treating Joseph P. Evans, The United States of America, through its Department of Veterans Affairs and Louis Stokes in Cuyahoga County, Ohio, by and through its agents, servants, and employees failed to exercise the degree of care required of reasonably prudent medical care providers under the same or similar circumstances and, thus, that conduct was negligent. Under the laws of the State of Ohio, a private person would be liable to Plaintiff for this conduct. In accordance with 28 U.S.C. § 1346(b), The United States of America is liable to Plaintiff for the damages described below.

16. At all times material hereto, a physician/patient relationship exists between the agents, servants, and employees of the Defendant and the decedent, Joseph P. Evans.

17. Plaintiff is pursuing a professional liability claim against The United States of America, the Defendant herein, which was acting through its authorized agents, servants, and employees.

18. The amount in controversy exceeds $150,000.00, an amount in excess of the jurisdictional limits for Arbitration.

**EMPLOYMENT AND SCOPE**

19. At all times material hereto, all persons involved in the medical and health-care services provided to Joseph P. Evans at Louis Stokes located in Cuyahoga County, Ohio, were agents, servants, or employees of The United States of America through its Department of Veterans Affairs, or some other agency thereof, and were at all times material hereto acting within the course and scope of such employment. The identities of these nurses, residents, physicians, medical students, and assistants are better known to the Defendant, and include, at a minimum, the following individuals who are identified in the medical record: Cynthia Bell, Laura Brown, M.D., Joanna Buchannon, Connie Garlock, Pharmacist David R. Gearhart, Michael Ignatowski, M.D., Colleen McQuown, M.D., Patricia James-Stewart, Elaine Jones, Jennifer Kraninger, M.D., Youssef Mahfoud, M.D., Pharmacist Martha Mazak, Ann McNeill, Kevin Smith and Joshua White as well as the entire VA emergency room staff.

**FACTUAL BACKGROUND**

20. Prior to sustaining a service related injury Joseph Evans had never used opiate medication. As a result, he subsequently developed the disease of addiction.

21. On January 13, 2019, Joseph P. Evans was admitted to Louis Stokes for treatment of opioid dependence/addiction.

22. On January 14, 2019, Joseph Evans was administered buprenorphine (Suboxone).

23. Buprenorphine is possessed of a long chemical "half life" and can increase the risk Qt wave elongation.

24. The buprenorphine was tapered in anticipation of methadone induction.

25. According to VA medical records, Joseph Evans suffered from high cardiac Qt wave levels on two previous occasions demonstrated by ECG.

5

26. Joseph Evans was also prescribed gabapentin and mirtazapine: central nervous system depressants.

27. Mirtazapine is also known to increase the risk Qt wave elongation.

28. At no time did any provider inform Mr. Evans of the potential risks of methadone including, but not limited to, cardiac arrhythmia, central nervous system depression, respiratory depression, drug-drug interactions, and/or death.

29. In 2006, the FDA issued a "black box" warning for the administration of methadone.

30. In 2016, the FDA issued a "black box" warning for the administration of combined opioid medications and benzodiazepines.

31. In 2019, the FDA issued a "black box" warning for the administration of combined opioid medications and Gabapentin.

32. There exists a known interaction between methadone and buprenorphine.

33. There exists a known interaction between mirtazapine and methadone.

34. At no time did any provider obtain informed consent from Mr. Evans for the administration of methadone and/or the co-administration of methadone, buprenorphine, gabapentin and mirtazapine.

35. At no time was a screening ECG performed.

36. At no time were Mr. Evan's prior high Qt wave ECG's reviewed.

37. Methadone induction began on January 28, 2019. Joseph Evans received 20mg.

38. On January 31, 2019, Mr. Evans requested and received an increase in methadone to 30mg.

39. At no time was an additional screening ECG performed.

40. On February 2, 2019, after his methadone increase, Mr. Evans became extremely drowsy and, in fact, fell asleep in a VA "common area." A nurse became concerned and directed Mr. Evans to the VA emergency room.

41. Mr. Evans was seen by an emergency room employees/staff and dismissed.

42. NO urine drug screen was performed.

43. NO informed consent upon discharge was noted.

44. A VA pharmacist from the emergency room was concerned about the increase in methadone and requested Mr. Evans methadone dose to be reduced.

45. Mr. Evans returned from the emergency room without an escort and was not monitored or checked until he was found dead in his room on February 2, 2019.

46. The Cuyahoga County Coroner listed the cause of death as "Acute intoxication by the combined effects of methadone, buprenorphine, gabapentin, and mirtazapine."

47. Since 2017 and likely before, the VA **knew** that other incidents of death resulting from methadone administration for addiction treatment occurred within the VA. The VA however failed to review, revise and/or implement proper methadone procedures which would likely have prevented the death of Joseph Evans.

48. Had the Defendant and its agents, servants, and employees acted in accordance with the standard of care, Joseph P. Evans' death would have been avoided.

49. The injuries and damages sustained by the decedent, Joseph P. Evans, were proximately caused by the negligence, carelessness, recklessness, and other tortious conduct of the Defendant through its agents, servants, and employees, all of whom were acting within and during the course and scope of their employment and authority.

50. The negligence, carelessness, recklessness, and other tortious conduct of the Defendant, and its agents, servants, and employees, consisted of the following:

   a. Negligent training of VA staff physicians, pharmacists and nurses;

   b. Failure to obtain informed consent from Joseph P. Evans for treatment with methadone;

   c. Failure to assess Joseph P. Evans for risk factors for treatment with methadone as well as in combination with other central nervous system depressants.;

   d. Negligent weaning and cessation of buprenorphine (Suboxone);

   e. Negligent administration of methadone;

   f. Failure to assess for potential drug-drug interactions in the medications prescribed to Joseph P. Evans;

   g. Failure to assess the potential central nervous system (CNS) depressant effects of the medications prescribed to Joseph P. Evans;

   h. Failure of communication between the pharmacists and the prescribing physicians regarding potential drug-drug interactions in Joseph P Evans;

   i. Failure of communication between the pharmacists and the prescribing physicians regarding the central nervous system depressant effects of the medications prescribed to Joseph P. Evans;

   j. Failure of communication between the emergency room staff, psychiatrist, and the responsible physicians with regard to Joseph P. Evans' somnolence;

   k. Failure of communication between nurses, physicians, psychiatrist, and pharmacist regarding Joseph P. Evans' symptoms of over-sedation;

   l. Negligently continuing Joseph P. Evans' methadone despite evidence of over-sedation;

   m. Failure to adequately monitor Joseph P. Evans for central nervous system depression;

   n. Failure to adequately monitor Joseph P. Evans for respiratory depression;

   o. Failure to comply with nursing policies and procedures;

   p. Failure to obtain an ECG prior to administration of methadone;

   q. Failure to obtain an ECG prior to Joseph P. Evans' methadone being increased;

    r.    Failure to obtain an ECG when Joseph P. Evans' heart rate was elevated;

    s.    Failure to recognize and to act upon Joseph P. Evans' symptoms as evidence of over-sedation;

    t.    Failure to properly assess Joseph P. Evans' altered mental status;

    u.    Failure to recognize Joseph P. Evans' respiratory distress;

    v.    Failure to administer Narcan to Joseph P. Evans when he exhibited signs of central nervous system depression;

    w.    Failure to have appropriate equipment available to respond to Joseph P. Evans' medical condition;

    x.    Failure to formulate, implement, and monitor/supervise an appropriate treatment plan for the decedent's care and treatment;

    y.    Negligence by the emergency room staff and employees;

    z.    Negligent monitoring of patient in the presence of over sedation; and

    aa.    Such other acts and omissions as will be uncovered during discovery and at trial.

51.    The injuries and losses suffered by Plaintiff, as set forth elsewhere in this Complaint, were a direct and proximate result of the negligence, carelessness, recklessness, and other tortious conduct of the Defendant, acting through its agents, servants, and employees, and were not due to any act or failure to act on the part of the decedent, or anyone acting on his behalf.

52.    The personal injuries and losses sustained by Plaintiff were caused by the negligence, carelessness, recklessness, and other tortious conduct of the Defendant, acting through its agents, servants, and employees, all of whom were acting within and during the course and scope of their employment and authority.

53.    As a result of the negligent, careless, reckless, and other tortious conduct of the Defendant, as described more fully in this Complaint, Joseph P. Evans, the decedent, suffered the following injuries: over-sedation, respiratory depression, aspiration of vomitus, cardiac arrhythmia,

cardiopulmonary arrest, pain, suffering, emotional distress, and death.

## CAUSES OF ACTION
## COUNT I:  WRONGFUL DEATH ACTION

54. Plaintiff incorporates by reference all of the averments contained in the preceding paragraphs as though fully set forth at length herein.

55. Sandra M. Hider is the mother of the decedent, Joseph P. Evans, and was appointed Administrator of the Estate by the Stark County Probate Court on July 24, 2019.

56. Plaintiff brings this action for wrongful death pursuant to 28 U.S.C. § 1346(b)(1).  The decedent, Joseph P. Evans, was survived by his mother, Sandra M. Hider, who is entitled to recover damages for his death and on whose behalf this action is being brought.

57. At no time during his lifetime did Joseph P. Evans bring an action for the damages alleged in this action, and no other action for the decedent's death is being commenced against the Defendant named in this lawsuit or its agents, servants, or employees.

58. The death of Joseph P. Evans and the damages resulting therefrom were proximately caused by the acts, omissions, and other tortious conduct of the Defendant named herein, as hereinbefore described in this Complaint.

59. As a direct and proximate result of the death of Joseph P. Evans, his surviving heirs have been deprived of future aid, assistance, services, comfort, and financial support.

60. As a further result of the tortious conduct of the Defendant named herein, Joseph P. Evans' surviving heirs have been caused to expend various sums for hospital, medical, funeral, administration and other expenses for which they are entitled to recover pursuant to the Wrongful Death Statute.

61. Plaintiff brings this action to recover all damages permitted by the Wrongful Death Act.

**WHEREFORE**, Plaintiff demands judgment and damages in her favor and against the Defendant, for an amount in excess of the jurisdictional limits for Federal Arbitration, with lawful interest from the date of the filing of the administrative claim until paid, plus all fees, costs, and such other relief as this Honorable Court deems equitable, just, and proper.

## COUNT II
## SURVIVAL ACTION

62. Plaintiff incorporates herein by reference the averments of the preceding paragraphs of the Complaint as though set forth fully herein.

63. Plaintiff brings this action on behalf of the Defendant's Estate for damages suffered by the Estate as the result of the decedent's death, including the decedent's pain and suffering, inconvenience, loss of life's pleasures, loss of earnings, and all other items of damages permitted pursuant to this statutory cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby prayers that judgment be entered in his favor and against Defendant The United States of America in excess of the limits for Federal Arbitration and as follows:

a. Past and further medical expenses, lost wages, pain and suffering, future impairment, loss of enjoyment of life, and cost of future care, in an amount totaling $4,000,000.00;

b. Pre and/or post-judgment interest as allowed by law;

c. Reasonable costs incurred in bringing this action;

d. Reasonable attorneys' fees incurred in bringing this action; and

    e.  Any and all other relief at law or in equity that this Court may deem just and proper to adequately compensate Plaintiff for her injuries in this matter.

Dated: January 20, 2021                                   Respectfully submitted,

                                                           */s/ Francis E. Sweeney, Jr.*
                                                           Francis E. Sweeney, Jr. (0058723)
                                                           Francis E. Sweeney, Jr., Esq. LLC
                                                           6105 Parkland Blvd., Suite 140
                                                           Mayfield Heights, OH 44124
                                                           PH: 440.446.1200
                                                           FAX: 440.550.8311
                                                           skip@fesweeneylaw.com
                                                           *Attorney for Plaintiff*